IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. JOHNNIE HENDERSON, (#B01349), | ) ) ) |
| Petitioner, | ) ) |
| v. | ) Case No. 11 C 0378 ) ) |
| RANDY PFISTER,[1] Acting Warden, Pontiac Correctional Center, | ) ) ) ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Johnnie Henderson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Henderson's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

Henderson does not present clear and convincing evidence challenging the statement of facts in the last state court decisions to address his arguments on the merits, which are the Illinois Appellate Court's opinions on direct appeal and post-conviction appeal, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo,* 590 F.3d 533, 537 (7th Cir. 2010). The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Henderson,* No. 1-02-

---

[1] Randy Pfister replaced Guy Pierce as the Acting Warden of the Pontiac Correctional Center, where Henderson is currently incarcerated. The Court, therefore, substitutes Pfister as the proper Respondent in this habeas case. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d).

0532 (Ill.App.Ct. Sept. 10, 2003) (unpublished) and *People v. Henderson,* No. 1-08-3578 (Ill.App.Ct. July 27, 2010) (unpublished).

## I.      Factual Background

Five police officers, one detective, two forensic investigators, six forensic scientists, and a pathologist testified at Henderson's 2001 trial.  Evidence at trial established that on the evening of December 14, 1998, Chicago police officers responded to a call of a burglary in progress at 5301 South Millard Street in Chicago, Illinois.  The police officers went to the wrong house, after which two women directed them to Anthony Janicek's home where the police found Henderson and another individual, Tyrone Petties.  Evidence also reveals that Henderson and Petties had pushed their way through the door of Janicek's home with guns in hand and repeatedly stabbed Janicek in the back and chest.  Noticing blood at the bottom of the stairs to the basement, the police officers found Janicek face down on the floor in the basement moaning for help.  Janicek then told the police officers that the two men had forced their way into his home, stabbed him, and forced him down the stairs.  After Janicek was taken to a nearby hospital, he died. The police transported Henderson and Petties to the Eighth District precinct.  DNA collected from Henderson's jeans and from a butcher knife matched Janicek's and Henderson's profiles.  Janicek's blood was also found on Petties' right shoe.

## II.     Procedural Background

Following a trial in the Circuit Court of Cook County, the jury found Henderson guilty of first-degree murder, after which the Circuit Court sentence him to 75 years imprisonment. Henderson filed a direct appeal to the Illinois Appellate Court arguing that:  (1) the prosecutor's opening statement and closing argument were improper; (2) he was denied his constitutional

right to self-representation; and (3) the trial court erred by failing to appoint new counsel to explore Henderson's post-trial allegations that his trial counsel was ineffective. The Illinois Appellate Court affirmed Henderson's conviction and sentence on September 10, 2003. Harris then filed a petition for leave to appeal ("PLA") in the Supreme Court of Illinois arguing that the prosecutor's opening statement and closing argument were improper and prejudicial. On December 3, 2003, the Supreme Court of Illinois denied Henderson's PLA.

On February 4, 2004, Harris filed a pro se post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et. seq.*, after which the trial court appointed counsel. Subsequently, Henderson filed two additional pro se post-conviction petitions. The trial court denied Henderson leave to file his two successive petitions and dismissed his original post-conviction petition. Henderson appealed the dismissal of his post-conviction petition arguing that his post-conviction counsel was constitutionally ineffective and operated under a conflict of interest. On July 27, 2010, the Illinois Appellate Court affirmed the trial court's dismissal of Henderson's post-conviction petition concluding that: (1) his post-conviction counsel performed reasonably; (2) the trial court did not err in denying him leave to file the two successive petitions; and (3) he did not establish any conflict of interest.

In August 2010, Henderson filed a post-conviction PLA in the Supreme Court of Illinois arguing that: (1) post-conviction counsel was ineffective for determining that his ineffective assistance of trial counsel claims were barred by res judicata; (2) post-conviction counsel was ineffective for treating his second and third post-conviction petitions as successive rather than as amendments to his original petition; and (3) his trial attorney was constitutionally ineffective for not investigating the alleged tampering of DNA evidence. On November 24, 2010, the Supreme

Court of Illinois denied Henderson's post-conviction PLA.

Thereafter, Henderson filed a motion for relief from judgment pursuant to 735 ILCS 5/2-1401, that the trial court denied. Henderson's appeal of this denial is still pending. As the Court explained in an earlier ruling in this case, a pending motion for post-judgment relief under 735 ILCS 5/2-1401 is not relevant to the Court's exhaustion analysis in the context of this habeas petition. *Henderson v. Pierce,* No. 11 C 0378, 2011 WL 1740076, at *2 (N.D. Ill. May 5, 2011).

## III. Habeas Petition

On January 18, 2011, Henderson filed the present pro se petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254(d). Construing Henderson's pro se habeas petition liberally, *see Martin v. Bartow,* 628 F.3d 871, 878 (7th Cir. 2010), he brings the following claims: (1) his trial counsel was constitutionally ineffective for failing to order a DNA test, failing to move to suppress evidence, failing to call expert or other witnesses, and failing to make a record of the pretrial publicity; (2) his post-conviction counsel was constitutionally ineffective for conceding that his post-conviction filings were successive petitions, rather than amended petitions, which prevented him from raising all of his post-conviction claims; (3) the trial court violated the double jeopardy clause of the Fifth Amendment by instructing the jury as to both the felony murder and underlying murder; (4) the trial court violated his right to a fair trial and right to be found guilty beyond a reasonable doubt by giving jury instructions that shifted the burden of proof and misstated elements of the offense; (5) the State violated his right to a fair trial by constructively amending the grand jury indictment through evidence and arguments presented at trial; (6) the trial court violated his right to an impartial jury by preventing full voir dire regarding pretrial publicity; (7) the trial court violated his Sixth Amendment rights when the

4

court sentenced him based on facts not charged in the indictment and not submitted to the jury in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (8) his extended-term sentence was based on an unconstitutional statute; (9) the State knowingly presented false DNA evidence; and (10) the trial court violated the confrontation clause of the Sixth Amendment by admitting into evidence his co-defendant's confession.

## LEGAL STANDARDS

### I. Habeas Standard

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Jones v. Basinger,* 635 F.3d 1030, 1040 (7th Cir. 2011). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405; *see also Stock v. Rednour,* 621 F.3d 644, 648 (7th Cir. 2010).

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably

5

applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407. "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable.'" *Bennett v. Gaetz,* 592 F.3d 786, 790 (7th Cir. 2010) (citation omitted); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original); *Wood v. Allen,* 130 S.Ct. 841, 849 (2010) (state court's factual finding not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Sussman v. Jenkins,* 636 F.3d 329, 361 (7th Cir. 2011) (citation omitted). Put differently, to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances" of the case. *See Williams v. Thurmer,* 561 F.3d 740, 746 (7th Cir. 2009) (citation omitted).

## II. Exhaustion and Procedural Default

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Gray v. Hardy,* 598 F.3d 324, 327 (7th Cir. 2010). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v.*

*Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Ward v. Jenkins,* 613 F.3d 692, 696 (7th Cir. 2010).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Smith v. McKee,* 598 F.3d 374, 382 (7th Cir. 2010). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

### I. Procedurally Defaulted Claims and Exceptions

#### A. Procedural Default

Respondent first argues that Henderson has procedurally defaulted all of his habeas claims except for his claim based on post-conviction counsel's ineffective assistance of counsel. The Court agrees. As explained above, a "petitioner in federal court must first exhaust his state remedies by fairly presenting his claims through one full round of state-court review." *Gray,* 598 F.3d at 327 (citing 28 U.S.C. § 2254(b)(1)). Here, the only claim on direct appeal that

7

Henderson fairly presented through one full round of state court review was that the prosecutor's opening statement and closing argument were improper, yet he did not bring this claim in his habeas petition. Further, the only claim that Henderson fairly presented through one full round of state court review during his post-conviction proceedings was his ineffective assistance of post-conviction counsel, which is discussed below. Accordingly, Henderson has procedurally defaulted all of his habeas claims except one. Therefore, unless Henderson can establish an exception to his default, the Court is barred from reviewing the merits of these nine habeas claims. *See Coleman v. Hardy,* 628 F.3d 314, 318 (7th Cir. 2010).

### B. Miscarriage of Justice Exception

In his motion to supplement his habeas petition filed on May 20, 2011, Henderson maintains that the miscarriage of justice exception applies to his procedurally defaulted claims. The "fundamental miscarriage of justice exception" concerns actual innocence and provides a gateway for the Court to review the merits of Henderson's procedurally defaulted claims. *See Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); *Coleman,* 628 F.3d at 318-19. "The fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Smith,* 598 F.3d at 387-88 (quoting *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). A habeas petitioner must support his actual innocence allegations "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513

8

U.S. at 324; *see also Coleman,* 628 F.3d at 319. "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005). Because this type of evidence is unavailable in the vast majority of cases, actual innocence claims are rarely successful. *See Schlup,* 513 U.S. at 324; *Smith,* 598 F.3d at 387-88.

Here, Henderson has not provided the Court with any "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *See Schlup,* 513 U.S. at 324. Instead, he argues that the victim's blood was planted on his jeans based on a discrepancy on an inventory sheet introduced into evidence at his trial. Not only is Henderson's argument based on speculation, the fact that there was a discrepancy on the inventory sheet was brought out at trial. *See Henderson,* No. 1-02-0532, at 20-24. Because Henderson has failed to present new, reliable evidence to support his actual innocence claim, he cannot escape the procedural default of his habeas claims. *See Schlup,* 513 U.S. at 324, 327; *Woods,* 589 F.3d at 377.

### C. Cause and Prejudice Exception

Henderson also argues that cause and prejudice except his procedural defaulted claims. "Cause for a default is ordinarily established by showing that some type of 'external impediment' prevented the petitioner from presenting his claim." *Promotor v. Pollard,* 628 F.3d 878, 887 (7th Cir. 2010) (citation omitted). "Prejudice is established by showing that the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *Lewis v. Sternes,*

9

390 F.3d 1019, 1026 (7th Cir. 2004)) (emphasis in original).

Henderson argues that his appellate counsel's ineffective assistance of counsel was the reason why he did not bring many of his claims on direct appeal and in his PLA to the Supreme Court of Illinois on direct appeal. Indeed, "[i]neffective assistance of counsel can constitute cause to set aside a procedural bar." *Promotor,* 628 F.3d at 887. Henderson, however, was required to present his ineffective assistance of counsel claims to the Illinois courts as independent constitutional claims before he can use them to establish cause for his procedural default in the present habeas petition. *See Murray,* 477 U.S. at 489; *Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009). To clarify, the "assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 petition, is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Smith,* 565 F.3d at 352.

Henderson only presented an ineffective assistant of post-conviction counsel claim on appeal from the dismissal of his post-conviction petition. Furthermore, he made no mention of any ineffective assistance of counsel claim in his PLA to the Supreme Court of Illinois on direct appeal. Accordingly, Henderson has procedurally defaulted any ineffective assistance of trial or appellate counsel claims that may have amounted to "cause" for his procedural default of his other habeas claims because he did not present them for one full round of review to the Illinois courts. *See Gray,* 598 F.3d at 327. Finally, because "ineffectiveness of post-conviction counsel does not supply 'cause' in the cause-and-prejudice formula," *see Byers v. Basinger,* 610 F.3d 980, 987 (7th Cir. 2010), any such argument fails. *See also Szabo v. Walls,* 313 F.3d 392, 397 (7th Cir. 2002). Therefore, the cause and prejudice exception to procedural default does not apply under the circumstances.

## II. Ineffective Assistance of Post-Conviction Counsel

Henderson properly exhausted his ineffective assistance of post-conviction counsel claim. It is well-established, however, the ineffective assistance of post-conviction counsel claims are not cognizable on collateral review because criminal defendants do not have a Sixth Amendment right to post-conviction counsel. *See Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)). As the relevant section of the AEDPA explains, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." *See* 28 U.S.C. § 2254(i). As such, Henderson's claim that his post-conviction counsel was constitutionally ineffective fails.

## III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Henderson a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Narvaez v. United States,* 641 F.3d 877, 881 (7th Cir. 2011); 28

U.S.C. § 2253(c)(2). Under this standard, Henderson must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

First, reasonable jurists would not find the Court's procedural rulings were wrong or debatable. Henderson procedurally defaulted all but one of his habeas claims, and he failed to establish any exception to his procedural default. Next, jurists of reasons would not debate the Court's conclusion that Henderson's ineffective assistance of post-conviction counsel claim is not cognizable on habeas review. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Henderson's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** July 28, 2011

                                **ENTERED**

                                **AMY J. ST. EVE**
                                **United States District Judge**